UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **DPC** | : | **DOCKET NO. 2:17-cv-24** |
| DOC # 536196 | | **SECTION P** |
| **VERSUS** | : | **JUDGE TRIMBLE** |
| **CALVIN JOHNSON** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is an application for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2241 by *pro se* petitioner, DPC. DPC is in the custody of the Federal Bureau of Prisons ("BOP"), and is incarcerated at United States Penitentiary Coleman I in Sumterville, Florida. However, his petition is based on events that occurred while he was incarcerated at the United States Penitentiary in Atwater, California ("USPA"). *See* doc. 7, p. 2. At the time of filing, DPC was incarcerated at Federal Correctional Institute in Oakdale, Louisiana ("FCIO").[1]

This matter was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

---

[1] Jurisdiction in a habeas proceeding must be judged as of the time a petition is filed. *Lee v. Wetzel*, 244 F.3d 370, 375 n. 5 (5th Cir. 2001). The district of incarceration has exclusive jurisdiction over an inmate's § 2241 petition challenging present physical confinement. *Id.* at 373–74; *Rumsfeld v. Padilla*, 124 S.Ct. 2711, 2722–23 (2004). Since DPC was incarcerated in this district when he filed his petition, jurisdiction and venue over his § 2241 petition are proper.

# I.
## BACKGROUND

DPC seeks a federal writ of *habeas corpus* to challenge a prison disciplinary conviction that resulted in the loss of good-time credits. Doc. 7, p. 2. According to the Incident Report [doc. 7, att. 2, p. 8], on July 23, 2015, a USPA officer approached DPC to advise him that he would be moved into general population. DPC refused, stating that it was unsafe for him to go into general population. *Id.* DPC was advised that an incident report would be filled out if he refused. *Id.* He expressed understanding of same and was charged with refusing a program assignment. *Id.* The charged offense was referred to the Disciplinary Hearing Officer ("DHO"). *Id.* On August 4, 2014, a hearing was held before the DHO, wherein DPC was found guilty of the prohibited act. *Id.* at 5–7. His sanctions included loss of twenty-seven days of good time credit, loss of ninety days of phone and commissary privileges, and a $30.00 fine. *Id.* at 6.

DPC states that he timely filed a grievance wherein he claimed that he should not have been sanctioned for seeking protection. Doc. 7, p. 2. He alleges that it was never received as USPA officers tampered with his mail. *Id.* DPC states that he filed a new grievance when he received confirmation that his first one was not received. *Id.* at 3. He claims that the grievance was denied as untimely on or about October 25, 2015. *Id.* Thereafter, he was sent to Miami for an evidentiary hearing, which he claims prevented him from timely appealing the adverse decision. *Id.* He states that upon his return to USPA, he filed a grievance with the regional office but that same was denied as untimely. *Id.*

In the present suit, DPC alleges that the he "had a valid reason to be housed in Protective Custody" due to a proffer showing his willingness to become an informant, which he alleges placed him at risk of being assaulted or killed in "High Security U.S. Penitentiaries." *Id.* at 7. He states that he when he was transferred to USPA on April 24, 2015, the special investigation specialists

("SIS") interviewed him, during which he informed them that it was documented that he had cooperated with the government and that his life would be in danger if he was in general population. Doc. 7, att. 1, pp. 3–4. DPC states that he explained the situation to SIS Lieutenant Hayes and provided him with a copy of his proffer agreement, but was still told that he (DPC) would have to go into general population and threatened with disciplinary action if he did not comply.[2] Doc. 7, att. 1, p. 4. His refusal to do so resulted in the incident report, DHO hearing, and above listed sanctions. DPC claims that the loss of good time credit constitutes cruel and unusual punishment in violation of his Eighth Amendment constitutional rights and increased his term of imprisonment. Doc. 7, p. 6; doc. 7, att. 1, p. 6. He also contends that his due process rights were violated as a result of the alleged interference with his mail "thwarting him from taking advantage of the grievance procedure." Doc. 7, att. 1, p. 9; doc. 7, pp. 7, 8. He further contends that his constitutional right to Equal Protection was violated by BOP officers failing to follow their own program statement and place him in protective custody. Doc. 7, p. 7.

As relief for the above, DPC asks for restoration of his good time credits. *Id.* at 8.

## II.
### LAW AND ANALYSIS

DPC seeks *habeas corpus* relief pursuant to 28 U.S.C. § 2241, which should be granted if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, DPC claims that he was wrongfully deprived of good-time credits.

*A. Miscellaneous Sanctions/Complaints*

According to well-settled precedent, sanctions that are "merely changes in the conditions of [an inmate's] confinement" do not implicate due process concerns. *Madison v. Parker*, 104 F.3d

---

[2] In the DHO's report, it was noted that the DHO had reviewed an SIS investigative report that found "no evidence that [DPC's] safety is endangered by being released into General Population." Doc. 7, att. 2, p. 6. According to the DHO, the same SIS report also noted that DPC could not identify anyone at the facility who posed a threat to him. *Id.*

765, 768 (5th Cir. 1997). Limitations imposed upon commissary or recreational privileges, and a cell restriction or solitary confinement on a temporary basis, are the type of sanctions that do not pose an atypical or significant hardship beyond the ordinary incidents of prison life. *See id.*; compare *Sandlin v. Conner*, 115 S.Ct. 2293, 2301 (1995) (no liberty interest protecting against a 30 day period of disciplinary segregation) with *Wilkinson v. Austin*, 125 S.Ct. 2384, 2394–95 (2005) (indefinite disciplinary segregation was an atypical punishment implicating the Due Process Clause). The Fifth Circuit has also decided that adjustments to a prisoner's classification status and the potential impact on good-time credit earning ability are not protected by the Due Process Clause. *See Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000).

To the extent that DPC seeks relief for losing commissary and phone privileges, neither implicate a protected liberty interest and he cannot show that he is entitled to *habeas corpus* relief from these particular forms of punishment. Likewise, DPC is not entitled to *habeas* relief relative to any claims herein that do not attack the fact or duration of his confinement as such claims must be brought in a civil rights action. *Richardson v. Fleming*, 651 F.2d 366, 372 (5th Cir. 1981); *Spencer v. Bragg*, 310 Fed. App'x 678, 679 (5th Cir. 2009). Accordingly, to the extent that DPC attempts to bring claims regarding the conditions of his confinement, including but not limited to interference with mail, such claims should be dismissed without prejudice to his ability to pursue them by filing a separate civil rights action.

### B. *Loss of Good Time Credits*

DPC claims that he was wrongfully deprived of good-time credits.

Federal prisoners have liberty interests in their accumulated good-time credit. *See Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000). Because a good-time credit liberty interest is implicated, the analysis approved by the Supreme Court in *Wolff v. McDonnell*, 94 S.Ct.

2963 (1974), and *Superintendent, Massachusetts Correctional Institution v. Hill*, 105 S.Ct. 2768 (1985), governs this review of the contested disciplinary proceedings.

In order for a prison disciplinary proceeding to comport with the requirements of due process, the following minimal procedural safeguards must be afforded: (1) adequate notice of the alleged violation; (2) an opportunity to present evidence; (3) written findings in support of the ruling; and (4) the requirement that upon review, "some evidence" support the ruling. *Hill*, 105 S.Ct. at 2773–74; *Wolff*, 94 S.Ct. at 2978–80. DPC does not claim that he was deprived of the protections established by *Wolff*. He received advanced written notice of the alleged disciplinary infraction; he was given the opportunity to call witnesses and present evidence to aid in his defense at the hearing; and he was provided with a written ruling from the factfinder. Doc. 7, att. 2, pp. 5–7. Based on the foregoing, the record demonstrates that DPC's disciplinary proceedings complied with the *Wolff* requirements.

Further, courts will not review a disciplinary hearing officer's factual findings *de novo*. Instead, the courts will only consider whether the decision is supported by "a modicum of evidence." *Hill*, 105 S.Ct. at 2773–74. Accordingly, "[p]rison disciplinary proceedings are overturned only where no evidence in the record supports the decision." *Broussard v. Johnson*, 253 F.3d 874, 877 (5th Cir. 2001). "Determining the believability of the testimonies presented at the hearing is left to the discretion of the hearing officer." *Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001). The information provided in a written incident report standing alone can satisfy the modicum of evidence standard. *Id.* at 536–37.

In this case, the DHO considered the following: (1) the incident report; (2) the investigation; (3) the reporting officer's written statement; (4) DPC's statement; (5) DPC's chronological disciplinary report; and (6) the SIS investigative report. Doc. 7, att. 2, pp. 5–6.

Based on a review of the above information, the hearing officer found DPC guilty of the charged offense. Given the range of information relied upon by the DHO, there is no question that the "some evidence" standard was met. Thus, even assuming that he properly and timely exhausted his administrative remedies, the petition would be subject to dismissal as DPC has failed to show that a constitutional violation occurred.

### C. Failure to Follow Program Statements

DPC claims that BOP Program Statement 5270.10 was not followed in regard to keeping inmates safe from known danger. Doc. 7, p. 7.

Program Statement 5270.10 relates to Special Housing Units.[3] Under this statement, inmates may be placed in administrative detention for their own protection in certain cases, including when they refuse to enter general population because the inmate is or is perceived to be an informant, or "because of alleged pressures or threats from unidentified inmates, or for no expressed reason" BOP Prog. Statement 5270.10, § 541.27(b)–(c). However, a warden or his designee must review such a placement within two work days to determine its necessity. *Id.* at § 541.28. If this investigation fails to verify a need for protection, the inmate is instructed to return to the general population and may face disciplinary action for noncompliance. *Id.* at § 541.30.

DPC does not explain how the above requirements were not met in his case, outside of his disagreement with the prison's determination that he was not entitled to protective custody. Even if the program statement was not followed, DPC would still not state a claim. In the Fifth Circuit, "a prison official's failure to follow the prison's own policies procedures or regulations, does not constitute a violation of due process, if constitutional minima are nevertheless met." *Myers v.*

---

[3] *See* U.S. Dep't of Justice, Inmate Discipline Program Statement 5270.10, *available at* https://www.bop.gov/policy/progstat/5270_010.pdf (last visited August 10, 2017)

*Klevenhagen*, 97 F.3d 91, 94 (5th Cir.1996); *see also Taylor v. Howards*, 268 F.3d 1063 (5th Cir. 2001). DPC's claim in this regard should be dismissed.

### III.
#### CONCLUSION

While a *pro se* litigant should ordinarily be given an opportunity to amend his complaint before it is dismissed, leave to amend is not required if the petitioner has already pleaded his "best case." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (quoting *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)). Here it is clear that DPC cannot state a claim for relief under § 2241 and that his conditions of confinement claims must be brought in a civil rights action.

Therefore, for reasons stated,

**IT IS RECOMMENDED** that DPC's *habeas corpus* claims be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS ALSO RECOMMENDED** that DPC's civil rights claims be **DENIED** and **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. Proc. 2(b), parties aggrieved by this report and recommendation have fourteen (14) days from its service to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the

District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 10th day of August, 2017.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE